IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN BIXLER, DORIS BIXLER, and D&S BIXLER TRUCKING, INCORPORATED,** | : | CIVIL ACTION NO. 3:20-CV-1819 |
| | : | |
| | : | (Judge Conner) |
| **Plaintiffs** | : | |
| | : | |
| v. | : | |
| | : | |
| **ANDREW LAMENDOLA,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Plaintiffs Steven Bixler, Doris Bixler, and D&S Bixler Trucking, Incorporated, assert three state-law personal injury claims against defendant Andrew Lamendola arising from an automobile accident. Lamendola moves for summary judgment on all claims. For the reasons that follow, the court will deny Lamendola's motion.

I.     **Factual Background & Procedural History**[1]

Plaintiff Steven Bixler ("Bixler") is the president and sole shareholder of plaintiff D&S Bixler Trucking, Incorporated ("Bixler Trucking"). (Doc. 29 ¶ 2). Bixler Trucking formerly provided hauling services to third parties, typically on a "longterm" basis and "almost always [under] verbal contracts." (See Doc. 30-1, S. Bixler Dep. 40:20:41:21). Bixler Trucking owned two tractor trailers that it utilized to provide hauling services, a 1989 Freightliner and a 1996 Kenworth. (See id. at 15:22-16:20, 52:7-53:6, 53:18-23, 56:15-16).

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the movant's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 29, 31). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

In addition to providing responses to each of Lamendola's statements of fact, plaintiffs' responsive statement includes 33 additional paragraphs styled as "Plaintiffs' Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment." (See Doc. 31 ¶¶ 24-56). Neither Federal Rule of Civil Procedure 56 nor Local Rule 56.1 authorizes this filing, and plaintiffs did not request leave of court therefor. We thus decline to accord these paragraphs the evidentiary weight contemplated by Rule 56.1. See Barber v. Subway, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015) (Conner, C.J.); see also Rau v. Allstate Fire & Cas. Ins. Co., 793 F. App'x 84, 87 (3d Cir. 2019) (nonprecedential) (citing with approval, *inter alia*, Barber, 131 F. Supp. 3d at 322 n.1, in holding that district courts enjoy wide discretion in interpreting their local rules). Nonetheless, we have examined the entire Rule 56 record, including plaintiffs' counterstatement, in resolving the instant motion.

In October 2018, Bixler Trucking was regularly servicing two clients: Frank Krammes Timber Harvesting, Inc. ("Krammes Timber"), located in Sacramento, Pennsylvania, and Wagner Hardwoods, located in Owego, New York. (See id. at 42:13-18). Bixler used the Freightliner for these clients; at the time, the Kenworth was inoperable from wear and tear and needed some $30,000 in repairs. (See id. at 52:7-53:6, 53:18-54:7, 56:8-14). Bixler testified that he and Frank Krammes, owner of Krammes Timber, entered an oral contract for hauling services in December 2017. (See id. at 42:19-24). Under that contract, Bixler would haul logs from Krammes Timber to Wagner Hardwoods and haul woodchips to Krammes Timber's mill in Towanda, Pennsylvania, when there were no logs to be hauled. (See id. at 43:1-19; Doc. 30-5, Krammes Dep. 8:7-17, 11:6-12:1, 12:5-15, 18:6-19:16). Bixler estimated gross revenue between December 2017 and October 2018 from both the Krammes Timber and Wagner Hardwoods hauling trips "averaged about $5,000 a week." (See S. Bixler Dep. 46:16-48:1).

On Friday, October 19, 2018, at approximately 7:30 p.m., Bixler was involved in an automobile accident while transporting an empty log trailer on a return trip from Owego. (See id. at 15:9-16:7, 17:2-14). Bixler was travelling southbound on Route 42 in Catawissa, Pennsylvania, at a speed of roughly 45 to 50 miles per hour, when defendant Andrew Lamendola, travelling in front of Bixler in the same direction, attempted to make a U-turn. (See generally id. at 18:22-23:5). Bixler testified that Lamendola's vehicle was toward the right side of the road or on the right shoulder and that, as Bixler approached, Lamendola pulled back onto the road and attempted to turn his vehicle into the opposing travel lane. (See id. at

3

21:1-22:6). Bixler applied the brakes and turned his tractor trailer to try to avoid the collision. (See id. at 22:1-6). His effort was unsuccessful, and the two vehicles collided while the tractor trailer was still moving at "probably 25 to 30 miles per hour." (See id. at 22:13-23:5).

Bixler testified he was wearing his seatbelt at the time of the accident. (See id. at 24:6-9). He could not recall "where all I flew around in that cab" but assumed parts of his body struck parts of the interior of the cab because he had a bump on his head and bumps and bruises on his knees and arm. (See id. at 24:3-21; see also Doc. 29 ¶ 6). Bixler did not immediately notice any pain and so declined medical treatment. (See S. Bixler Dep. 30:18-31:2). Two days later, on Sunday, October 21, Bixler began experiencing "left hand numbness." (See id. at 33:23-34:1). Bixler sought medical treatment with his family doctor the next day and was referred to a neurologist. (See id. at 34:2-9, 35:1-6). After an MRI, neck X-rays, and a nerve test, the neurologist diagnosed Bixler with a bulging disc in his neck and explained the bulging disc had caused a pinched nerve, which in turn had caused the left-hand numbness. (See id. at 35:6-36:4). Bixler "was given three options; do nothing, physical therapy, or surgery." (See id. at 36:5-8). Bixler "chose to do nothing." (See id. at 36:13-15). Bixler testified that he continues to experience stiffness in his neck and has numbness in his hand about twice per week. (See id. at 36:22-37:21). He denies experiencing numbness before the accident. (See id. at 39:17-19).

The Freightliner was inoperable for four months after the accident. (See Doc. 29 ¶ 17; Doc. 31 ¶ 17; S. Bixler Dep. 56:17-23). While the Freightliner was out of service, Bixler obtained temporary employment with Krammes Timber hauling

woodchips using one of its tractor trailers, making roughly $1,000 per week. (See S. Bixler Dep. 65:4-66:3). According to Bixler, Lamendola's insurance company, State Farm Insurance, did not authorize coverage for repairs on the Freightliner until late December 2018 or early January 2019. (See id. at 57:10-58:5). Bixler had the repair work done immediately after receiving authorization, (see id. at 58:6-9), and the Freightliner was back in service by February 2019, (see id. at 64:1-11). Bixler then told Krammes he was able to get back to hauling with his own truck, at which point Bixler learned Krammes Timber and Wagner Hardwoods had "made other arrangements" and no longer needed his services. (See id. at 58:19-22, 63:20-65:3).

Bixler secured new employment providing hauling services for RJ's Transport in Carlisle, Pennsylvania, in March 2019. (See id. at 66:15-22). He testified he made less than $2,000 per week working for RJ's Transport. (See id. at 67:4-6). Bixler continued driving for RJ's Transport until October 2019, when Bixler Trucking was forced to "shut down" altogether. (See id. at 67:7-12). Bixler explained that, due to the cost associated with reopening his insurance policy, resuming business is no longer financially feasible. (See id. at 69:8-23).

Bixler executed a "property damage only" release on April 26, 2019, regarding certain categories of claims resulting from the accident. (See Doc. 30-4; see also Doc. 29 ¶ 14). The document, which is titled "Release (Property Damage Only)," provides in full:

5

> 32-01M6-50Z
> Steven Bixler
> Claim for lost work due to vehicle repairs
>
> For the Sole Consideration of:
>
> Eighteen thousand ($18,000.00) dollars, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby and forever discharges Andrew Lamendola, Paula Lamendola and Robert Lamendola, their heirs, executors, administrators, agents and assigns and all other persons, firms or corporations liable, or who may be claimed to be liable, none of whom admit liability to the undersigned, but all expressly deny any liability, from any and all claims, demands or suits of any kind on account of and resulting from damage to property caused by an accident which occurred on or about the 19th day of October, (year) 2018, at or near Road Side, Catawissa, PA.
>
> Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the damages above mentioned, and for the express purpose of precluding forever any further or additional claims relating to property damage arising out of the aforesaid accident.
>
> Undersigned hereby accepts draft or drafts as final payment of the consideration set forth above.
>
> This release expressly reserves all rights of the parties released to pursue their legal remedies, if any, against the undersigned, agents and assigns.

(See id.)  The release is signed "Steven B. Bixler Pres."  (See id.; Doc. 29 ¶ 16; Doc. 31 ¶ 16).

Bixler testified that his relationship with his wife, plaintiff Doris Bixler, has been "strained" due to the difficult financial situation they found themselves in after the accident.  (See S. Bixler Dep. 70:15-18).  Doris Bixler confirmed that they

6

have struggled financially as a result of the accident. (See Doc. 30-2, D. Bixler Dep. 16:10-21). In interrogatory responses, the Bixlers relayed that the accident caused them to argue about finances and that the resulting stress "sapped [them] of energy and significantly interfered with their relationship with one another." (See Doc. 30-3 at 5). Doris Bixler added that she perceives her husband "as being shorter, more cynical, and overall more unhappy" since the accident. (See id.) The Bixlers swore affidavits in response to Lamendola's summary judgment motion further detailing the many ways in which the accident and Bixler's injury negatively impacted their marriage and their lives. (See Doc. 32-4).

Plaintiffs filed this lawsuit against Lamendola in October 2020. Plaintiffs assert three Pennsylvania state-law claims in their complaint: a negligence claim by Steven Bixler (Count I), a loss of consortium claim by Doris Bixler (Count II), and a negligence claim by Bixler Trucking (Count III). After a period of discovery and an unsuccessful attempt at settlement negotiations, Lamendola moved for summary judgment. The motion is fully briefed and ripe for disposition.

## II.   Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light

7

most favorable to the non[]moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

### III. Discussion

Lamendola raises factual and legal arguments challenging all three of plaintiffs' claims. We address each argument *seriatim*.

#### A. Expert Requirement

Lamendola first attacks Bixler's negligence claim for lack of an expert medical opinion to establish causation. (See Doc. 28 at 4-5). A plaintiff asserting negligence in Pennsylvania "must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question, and actual loss or damage." See Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 61 (3d Cir. 2009) (quoting Phillips v. Cricket Lighters, 841 A.2d 1000, 1008 (Pa. 2003)).

Pennsylvania courts generally require expert medical opinion testimony to prove causation in personal-injury cases. See Lattanze v. Silverstrini, 448 A.2d 605, 608 (Pa. Super. Ct. 1982) (citing Smith v. German, 253 A.2d 107, 108-09 (Pa. 1969)). Expert opinion testimony is not required, however, if there is an "*obvious* causal relationship" between the alleged negligent act and the injury complained of. See

id. (citing Smith, 253 A.2d at 108). A causal relationship is "obvious" if the injury is "either an 'immediate and direct' or the 'natural and probable' result of" the alleged negligence. See id. (citing Tabuteau v. London G. & A., Ltd., 40 A.2d 396 (Pa. 1945); Fenstermaker v. Bodamer, 171 A.2d 641 (Pa. Super. Ct. 1961)). Cases in which expert testimony is not required typically share two common traits: (1) the plaintiff begins exhibiting symptoms of the injury "immediately after the accident or within a relatively short time thereafter," and (2) the alleged injury is "the type one would reasonably expect to result from the accident in question." See id. (collecting cases).

Our survey of Pennsylvania case law makes clear that this is precisely the type of case in which medical expert testimony is not required. For example, in Lattanze v. Silverstrini, 448 A.2d 605 (Pa. Super. Ct. 1982), plaintiff and his family were in a car accident and, immediately afterward, plaintiff indicated he was "all right" and did not complain of any pain. See Lattanze, 448 A.2d at 220. Six hours later, however, he began to experience a headache as well as neck, shoulder, and arm pain, and he received medical treatment that evening. See id. at 220-21. The court concluded that a jury could find an obvious causal relationship between the accident and the injuries, particularly since the plaintiff never experienced these physical symptoms before the accident. See id. at 225-26. So too in Fenstermaker v. Bodamer, 171 A.2d 641 (Pa. Super. Ct. 1961), in which the plaintiff was in "good" health and "never had any trouble" with his neck before the accident, but after the accident, began to experience neck, shoulder, and elbow pain. See Fenstermaker, 171 A.2d at 642-43. Federal courts within this circuit have likewise held that the

9

causation question for injuries like Bixler's, which develop immediately or shortly after a motor vehicle accident, does not require expert medical testimony. See, e.g., Schweikert v. Eagle, No. 20-4310, 2022 WL 394751, at *4 (E.D. Pa. Feb. 9, 2022) (putting causation issue to jury without expert testimony when plaintiff complained of back pain immediately after accident and MRI showed lumbar disc degeneration less than two months later); Marx v. Schlichter, No. 3:10-CV-257, 2011 WL 1988424, *2 (M.D. Pa. May 23, 2011) (Kane, J.) (same for neck and back pain arising after accident in which plaintiff's head hit windshield).

A jury could easily find Bixler's injuries were the "natural and probable" consequence of the accident. See Lattanze, 448 A.2d at 608. Bixler testified that his Freightliner tractor trailer collided with Lamendola's vehicle while travelling at a speed of approximately 25 to 30 miles per hour. (See S. Bixler Dep. 22:13-23:5). He explained that he suffered bumps and bruises from being thrown around during the collision, but that he declined medical treatment because he did not initially notice any pain. (See id. at 24:3-21, 30:18-31:2). Just *two days* later, however, he began experiencing left-hand numbness, and he promptly treated with his family doctor the next business day. (See id. at 33:23-34:7). Bixler specifically denied ever having experienced left-hand numbness before the accident. (See id. at 39:17-19). We hold

that, on this record, a jury could causally link Bixler's injury to the accident without the aid of an expert.[2]

## B. Loss-of-Consortium Evidence

Lamendola challenges plaintiff Doris Bixler's loss-of-consortium claim on two grounds. We dispense with both in short order. Lamendola first argues that Steven Bixler's failure to produce a medical expert to support his negligence claim is fatal to Doris Bixler's loss-of-consortium claim. (See Doc. 28 at 5-6). A loss-of-consortium claim is derivative of, and thus rises and falls with, the injured spouse's underlying tort claim. See Shuker v. Smith & Nephew, PLC, 885 F.3d 760, 777-78 (3d Cir. 2018) (quoting Darr Constr. Co. v. Workmen's Comp. Appeal Bd., 715 A.2d 1075, 1079-80 (Pa. 1998)). We held *supra* that Bixler's negligence claim does not

---

[2] Lamendola, for his part, fails to explain why he believes expert medical testimony is necessary in this case. None of the usual reasons for requiring such testimony in a personal-injury case apply. This is not a case, for example, where there are complicated questions involving preexisting conditions. Cf., e.g., Houp v. United States, No. 2:20-CV-432-MJH, 2021 WL 4894531, at *4 (W.D. Pa. Oct. 20, 2021) (expert testimony required when, *inter alia*, plaintiff had "significant prior history" of similar symptoms); Myers v. Edwards, No. 1:13-CV-792, 2015 WL 507151, at *3 (M.D. Pa. Feb. 6, 2015) (Mehalchick, M.J.) (same when medical record revealed preexisting condition). This also is not a case involving significant delay between accident and treatment. Cf., e.g., Cabrera v. Ross Stores of Pa., LP, No. 13-5218, 2015 WL 7455789, at *2 (E.D. Pa. Nov. 24, 2015) (expert testimony required when full month elapsed between fall and plaintiff seeking medical attention at her attorney's suggestion). Nor is it the type of case in which the injury claimed, on its face, bears no natural or logical relationship to the alleged negligence. Cf., e.g., Kozak v. W. Vincent Township, 240 A.3d 931, 2020 WL 5534539, at *7 (Pa. Super. Ct. Sept. 15, 2020) (expert testimony required when plaintiff tripped and landed on hands and knees and later sought damages for "speech and cognitive difficulties"); Simon v. Workmen's Comp. Appeal Bd., 415 A.2d 1290, 576-77 (Pa. Commw. Ct. 1980) (same when plaintiff attempted to link detached retina to trip and fall).

require medical expert testimony; accordingly, Doris Bixler's loss-of-consortium claim likewise survives Lamendola's challenge to the sufficiency of the evidence.

Lamendola also suggests the record does not establish "physical or emotional" harm to the marital relationship but only financial harm which is alone insufficient to sustain a loss-of-consortium claim. (See Doc. 28 at 5-6). Assuming *arguendo* Lamendola's legal argument is correct, see, e.g., Dugan v. Bell Tel. of Pa., 876 F. Supp. 713, 728 (W.D. Pa. 1994) (observing "no court construing Pennsylvania law has permitted recovery . . . based solely on *pecuniary* injuries to the plaintiff's spouse"), his view of the record is flat wrong. Lamendola claims Bixler "answered no" when asked whether the accident had "any impact on your relationship with your wife." (See Doc. 28 at 6). *Per contra*, Bixler replied that the accident caused "a lot of strained moments while she tried to pay bills with no money." (See S. Bixler Dep. 70:15-18). Moreover, both Bixlers relayed in interrogatory responses that the accident "significantly interfered with their relationship with one another." (See Doc. 30-3 at 5). Doris Bixler described her husband as "shorter, more cynical, and overall more unhappy" since the accident. (See id.) And in sworn affidavits filed with their responsive brief, the Bixlers detail the damage the accident inflicted on their marital relationship. (See Doc. 32-4). The Rule 56 record contains more than enough evidence to submit Doris Bixler's loss-of-consortium claim to the jury.

    **C.**    **Scope of Release of Claims**

Lamendola next posits that a limited release of claims signed by Bixler applies equally to Bixler Trucking to bar all claims for wage loss and lost business. (See Doc. 28 at 6). Bixler does not dispute that he signed a release and relinquished

12

his personal wage-loss claim in exchange for payment of $18,000.  (See Doc. 32 at 13-14; see also Doc. 30-4).  He rejoins that the release does not encompass Bixler Trucking's separate claims for lost work due to the accident.  (See Doc. 32 at 13-16).

Our primary objective when interpretating a contract is to ascertain the intent of the contracting parties.  Commonwealth ex rel. Kane v. UPMC, 129 A.3d 441, 463 (Pa. 2015) (citing Lesko v. Frankford Hosp.-Bucks Cnty., 15 A.3d 337, 342 (Pa. 2011)).  Clear and unambiguous contractual terms "are deemed to be the best reflection of the intent of the parties" and must be given their plain meaning based on the contract alone.  See id. (citing Kripp v. Kripp, 849 A.2d 1159, 1162 (Pa. 2004)).  If, however, a contractual term is ambiguous, we may resort to extrinsic evidence to resolve or clarify the ambiguity.  See id. (citing Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 429 (Pa. 2001)).  A term is ambiguous if it is "reasonably susceptible of different constructions and capable of being understood in more than one sense."  In re Somerset Reg'l Water Res., LLC, 949 F.3d 837, 845 (3d Cir. 2020) (quoting Schwab v. Pennsummit Tubular, LLC (In re Old Summit Mfg., LLC), 523 F.3d 134, 137 (3d Cir. 2008) (quoting Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986))).  Courts interpret unambiguous contractual terms as a matter of law, but must leave interpretation of ambiguous terms to the finder of fact.  See Pac. Emps. Ins. Co. v. Global Reinsurance Corp. of Am., 693 F.3d 417, 426 (3d Cir. 2012) (citing Ins. Adjustment Bureau, Inc. v. Allstate Ins., Inc., 905 A.2d 462, 469 (Pa. 2006)).

When contracting parties dispute whether one party signed the contract in a personal or a representative capacity, we must "consider not only each word

13

and signature within the four corners of the instrument, but also the position, style, and arrangement of the whole writing." See Trenton Tr. Co. v. Klausman, 296 A.2d 275, 276 (Pa. Super. Ct. 1972); see also Boyden v. HLS II, LLC, No. 18-3283, 2019 WL 2866048, at *2 (E.D. Pa. July 2, 2019) (citing Trenton Tr. Co., 296 A.2d at 276); Laurel Chase Grp., LLC v. Coyle, No. A-4027-13T4, 2015 WL 3755078, at *2 (N.J. Super. Ct. Law Div. June 17, 2015) (same). In such cases, parol evidence is admissible to draw out the facts and circumstances attending the contract's execution and to ascertain the contracting parties' intent. See Trenton Tr. Co., 296 A.2d at 277 (citing Dormont Sav. & Tr. Co. v. Kommer, 13 A.2d 525, 527 (Pa. 1940)).

The release *sub judice* is patently ambiguous. It is entirely unclear whether Bixler signed the document in a personal or representative capacity. Bixler notes (correctly) that the release does not explicitly reference Bixler Trucking and that the claim information portion of the document identifies only "Steven Bixler" by name.[3] (See Doc. 30-4). It is the manner in which Bixler affixed his signature that creates the ambiguity: he appears to have executed the release in a representative capacity, signing "Steven B. Bixler *Pres*." on the line marked "Releasor Signature." (See id. (emphasis added)); cf. Trenton Tr. Co., 296 A.2d at 277 ("Conversely, it can properly be asked why are the official titles after the signatures if there was an intention that there be personal liability."). Adding to the confusion, the release

---

[3] The release does have "D & S Bixler Trucking Inc" printed on the header, along with a date and time ("Apr 26 19, 03:08p"), phone number ("570-682-8072"), and page number ("p.2"). (See Doc. 30-4). In an affidavit submitted with plaintiffs' opposition papers, Bixler explains this text appears on the release "only because I sent it from the office fax machine." (See Doc. 32-4 at 5, S. Bixler Aff. ¶ 47).

14

never defines who the "Releasor" is.  (See Doc. 30-4).  And the subject matter of the release—"claim for lost work due to vehicle repairs"—could apply equally to Bixler, Bixler Trucking, or both.  (See id.)  Thus, this is a "classic case of ambiguity."  See Trenton Tr. Co., 296 A.2d at 277.  We will accordingly deny Lamendola's motion for summary judgment and reserve the question of the scope of the release for trial.

### D. Wage-Loss and Loss-of-Business Damages

Lamendola alternatively argues that, assuming *arguendo* the release does not bar all claims for lost profits, plaintiffs have failed to adduce sufficient proof of those damages.  Specifically, Lamendola cites to Frank Krammes's deposition testimony, wherein Krammes denies having "any kind of contract" with Bixler Trucking.  (See Doc. 28 at 7; see also Krammes Dep. 37:12-14).  Lamendola avers that any claim for business losses based on Bixler Trucking's relationship with Krammes is "purely speculative," since there was no contractual guarantee of future business.  (See Doc. 28 at 7).

As a threshold matter, Lamendola's argument ignores Bixler's contrary testimony: Bixler testified he and Krammes *did* enter an oral contract for hauling services in December 2017.  (See S. Bixler Dep. 42:19-24).  There is thus a genuine dispute of material fact as to whether a contract existed.  Moreover, regardless of whether the arrangement was reduced to a formal contract, there is no dispute that Bixler Trucking was providing continuous hauling services for Krammes before the accident, (see S. Bixler Dep. 43:1-47:16; see also Krammes Dep. 10:21-13:23, 18:6-19:16), or that, after—and as a result of—the accident, Bixler Trucking lost that work, (see Krammes Dep. 40:1-10 (testifying he had to "replace[] the slot in [his]

15

business that was previously occupied by D&S Bixler Trucking")).  Nor is there any dispute that Krammes was satisfied with Bixler Trucking's work; indeed, Krammes testified he would have hired Bixler Trucking back if he had enough work to do so. (See id. at 22:8-10, 24:8-11, 37:20-38:2).  Contrary to Lamendola's selective view of the record, there is ample evidence from which a jury could find Bixler and Bixler Trucking would have continued their work for Krammes but for the accident.[4]  We will thus deny summary judgment on this ground as well.

---

[4] Lamendola cursorily invokes our court of appeals' decision in Gumbs v. International Harvester, Inc., 718 F.2d 88 (3d Cir. 1983).  (See Doc. 28 at 7 (citing Gumbs, 718 F.2d 88)).  The court in Gumbs concluded that plaintiff's expert opinion on past and future wage loss should not have been admitted because the opinion lacked sufficient factual foundation; the court noted that the expert's wage-loss figure relied upon plaintiff's remaining life expectancy rather than his *work*-life expectancy; that the expert based his calculation on an annual income that was double what plaintiff had earned in the preceding four years; and that the expert included fringe benefits even though plaintiff had never received such benefits in the past.  See Gumbs, 718 F.2d at 98.  To the extent Lamendola intends his cursory invocation of Gumbs as a challenge to plaintiffs' expert report and opinion in this case, it is without merit.  As plaintiffs observe in response, their expert calculated lost future revenue based on Bixler Trucking's actual revenue from its work with Krammes Timber and Wagner Hardwoods and capped the calculation at Bixler's presumptive retirement age of 65.  (See Doc. 32 at 20; Doc. 32-6).

16

**IV.**     **Conclusion**

The court will deny Lamendola's motion for summary judgment.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     July 5, 2022